NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0008n.06

No. 14-3370

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 06, 2015
DEBORAH S. HUNT, Clerk

KENNETH STEAGALL,                           )
                                            )
        Plaintiff-Appellant,                )       ON APPEAL FROM THE
v.                                          )       UNITED STATES DISTRICT
                                            )       COURT FOR THE SOUTHERN
COMMISSIONER OF SOCIAL SECURITY,            )       DISTRICT OF OHIO
                                            )
        Defendant-Appellee.                 )


Before:  COLE, Chief Judge; KETHLEDGE, Circuit Judge; OLIVER, District Judge.[*]

KETHLEDGE, Circuit Judge.  The district court affirmed an administrative law judge's denial of Kenneth Steagall's application for social-security disability benefits.  We affirm.

I.

In December 2002, Steagall was parked on the side of the road during a winter storm when another car struck his car.  After the accident, Steagall experienced neck and back pain, which prevented him from doing his job as an electrician.  Over the next year, to try to alleviate his pain, Steagall received epidural steroid injections, participated in physical therapy, and saw a chiropractor.  *E.g.*, A.R. at 157, 179-80.

Steagall found those conservative treatments ineffective, so he elected to have spinal-fusion surgery in March 2004.  The surgery was successful, but Steagall continued to have pain in his back and right shoulder.  Over the next few years, Steagall saw several doctors for

---

[*] The Honorable Solomon Oliver Jr., Chief District Judge for the Northern District of Ohio, sitting by designation.

treatment of his pain, and his other medical conditions. Two of those doctors—Steven Wunder and Andrea Murphy—opined that Steagall suffered from disabling pain and could not work.

Meanwhile, Steagall applied for disability benefits. An ALJ held a hearing on his disability claim in April 2007. After the hearing, the ALJ denied the claim. Steagall appealed. The district court reversed and remanded, holding that the ALJ failed to explain adequately why she gave little weight to the opinions of Drs. Wunder and Murphy.

In February 2011, the ALJ held a second hearing, at which Dr. Richard Hutson, an orthopedic surgeon, testified. Although Dr. Hutson had not examined Steagall, he had reviewed Steagall's entire medical record. He testified that the opinions of Drs. Wunder and Murphy were medically unsound and unsupported by the rest of the record. Based on his own review, he concluded that Steagall could physically perform at least sedentary work.

The ALJ again denied Steagall's disability claim. The ALJ found that Steagall suffered from degenerative disc disease and shoulder impingement with underlying acromioclavicular joint arthrosis. A.R. at 594. Although the ALJ found that these "severe impairments" caused Steagall pain, the ALJ did not find credible Steagall's reports that his pain was "disabling." The ALJ also again found, based in part on the testimony of Dr. Hutson, that the opinions of Drs. Wunder and Murphy should receive little weight. Finally, after reviewing the record evidence and giving great weight to the opinion of Dr. Hutson, the ALJ found that Steagall could perform some jobs that existed in the economy—albeit not his previous job as an electrician. *See* A.R. at 598. As a result, the ALJ concluded that Steagall was not disabled.

Steagall appealed, and the district court affirmed. The court held that the ALJ had sufficiently explained her reasons for discounting the opinions of Drs. Wunder and Murphy, and that substantial evidence supported the denial of benefits. This appeal followed.

II.

Our review is limited to whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. *See Kyle v. Comm'r of Soc. Sec.,* 609 F.3d 847, 854 (6th Cir. 2010). Substantial evidence is evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

Steagall challenges on several grounds the ALJ's conclusion that he is not disabled. He first argues that the ALJ should have given greater weight to Dr. Wunder's and Dr. Murphy's opinions that Steagall is disabled because he cannot perform any work. An ALJ must give the opinions of treating physicians "controlling weight" if those opinions meet certain criteria. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If the opinions do not deserve controlling weight, the ALJ must determine what weight to give them by considering the following factors: the length, nature, and extent of the treatment relationship; the supportability of the physician's opinion and the opinion's consistency with the rest of the record; and the physician's specialization. *Id.* The ALJ must explain what weight she gave to treating-physician opinions. *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

The ALJ found that the opinions of Drs. Wunder and Murphy did not deserve controlling weight. Steagall does not challenge this finding; instead, he contends that, even if the opinions were not entitled to controlling weight, the ALJ short-circuited the required analysis and simply gave the opinions no weight at all. But the ALJ gave Dr. Murphy's opinion some weight—the ALJ credited her opinion that Steagall could not sit or stand for an extended period. The ALJ also explained that Dr. Murphy, a primary-care physician, had treated Steagall for only 10 months, had failed to support her opinion with documentation of testing or other objective medical bases for her conclusions, and did not appear to understand the Social Security Act's

definition of "disability." Dr. Murphy even conceded that she had never performed a "full functional evaluation of Steagall." A.R. at 682. Thus, the ALJ considered the correct factors in analyzing Dr. Murphy's opinion. And the ALJ's findings—which are supported by the record— justify her decision to give the opinion only a little weight.

As to Dr. Wunder, Steagall correctly asserts that the ALJ apparently gave his medical opinions no weight. *See* A.R. at 606. The ALJ explained, however, that Dr. Wunder's opinions were inconsistent with the findings of numerous other doctors and unsupported by the rest of Steagall's medical record. For example, although Dr. Wunder reported several abnormal neurological findings, the ALJ counted 11 times in the record when Steagall's other treating doctors (including Dr. Murphy) reported "normal" neurological examinations. The ALJ also relied on Dr. Hutson's testimony that many of Dr. Wunder's findings were not only inconsistent from exam to exam, but "could not be explained orthopedically." A.R. at 604. In this regard, the ALJ gave more weight to the opinion of Dr. Hutson because of his greater expertise in orthopedic medicine than Dr. Wunder, who is a rehabilitative specialist. Finally, the ALJ noted that Dr. Wunder only treated Steagall a handful of times over several years. Thus, the ALJ also considered the appropriate factors in analyzing Dr. Wunder's opinion, and her decision to give that opinion no weight is supported by the record.

Next, Steagall argues that the ALJ erred by giving great weight to Dr. Hutson's opinion that Steagall can physically perform sedentary work. Steagall contends that the ALJ failed to apply the same rigorous scrutiny to Dr. Hutson's opinion as she applied to those of Drs. Wunder and Murphy. The ALJ must determine what weight to give the opinion of a non-treating physician by applying the same factors discussed above, *i.e.*, the opinion's supportability and consistency, and the physician's specialization. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d

365, 379 (6th Cir. 2013). The ALJ cannot apply greater scrutiny to the opinions of treating sources over those of non-treating sources. *See id.*

Here, the ALJ explained that Dr. Hutson's opinion about Steagall's capabilities was consistent with, and supported by, the record. As one example, Dr. Hutson's opinion that Steagall could sit or stand for six hours per day as long as he could periodically change positions to relieve discomfort was supported by the assessment of the state medical examiner, Dr. Hill. *See* A.R. at 355, 608. In turn, Dr. Hill's assessment—which the ALJ also gave great weight—is supported by the opinions of other treating doctors who believed that Steagall had the capability to return to light-duty work at least. *See, e.g.*, *id.* at 173, 192, 221. Dr. Hutson also took into account Steagall's well-documented pain in formulating his opinion. For example, he recommended more significant work restrictions than some of Steagall's other doctors. *Compare id.* at 192, *with id.* at 570, 608. Finally, the ALJ credited Dr. Hutson's specialization in orthopedic medicine. Thus, the ALJ again considered the correct factors when she weighed the opinions of the non-treating physicians, and her findings are likewise supported by the record.

Steagall also argues that the ALJ improperly failed to credit Steagall's testimony that he has disabling pain. A claimant's subjective complaints of pain can support a disability finding if the record contains "objective medical evidence" of a severe medical condition that "can reasonably be expected to produce the alleged disabling pain." *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994) (citation omitted). Even when the record contains this evidence, however, the ALJ may also consider the credibility of the claimant's subjective complaints. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003). The ALJ's credibility determinations—when supported by substantial evidence—are entitled to "great weight." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007).

An ALJ may discount a claimant's credibility when the ALJ "finds contradictions among the medical reports, claimant's testimony, and other evidence." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (internal quotation marks omitted). Here, the ALJ found that the record contradicted Steagall's reports of disabling pain. First, she found that the medical evidence did not confirm the severity of Steagall's reported pain. For example, multiple specialists opined that Steagall could return to work, and Steagall did not consistently report a disabling level of pain. *E.g.*, A.R. at 192, 309-11, 873. The ALJ also properly found that Steagall's decision to stop taking, after many years, prescribed pain medication in favor of over-the-counter drugs undermined his reports of disabling pain. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). Finally, the ALJ concluded that Dr. Hill's assessment—which found that Steagall could care for himself, perform chores, drive, lift 30 pounds occasionally and 20 pounds frequently, sit or stand for six hours a day, and push and pull at will—also suggested that Steagall's pain was not disabling. *See* A.R. at 355, 608. Thus, substantial evidence supported the ALJ's finding that Steagall was not fully credible. *See, e.g.*, *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531-32 (6th Cir. 1997).

Steagall next argues that the ALJ erred in finding that Steagall is not disabled because jobs exist that he can perform. A disability claimant is not entitled to benefits if the government offers substantial evidence that the claimant can perform specific jobs that exist in significant numbers in the economy. *See Wilson*, 378 F.3d at 548-49. The testimony of a vocational expert in response to a hypothetical question that accurately describes the claimant's impairments can supply this evidence. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010).

Here, the ALJ credited Dr. Hutson's testimony that Steagall could perform only sedentary work and needed to change positions every hour for a few minutes. The ALJ then asked Dr.

Parsons, a vocational expert, if significant numbers of sedentary-level jobs existed in the economy that Steagall could perform given his background. Dr. Parsons identified three qualifying jobs: a dispatcher of maintenance or utility services, an electrical-materials expediter, and an electrical-equipment assembler. A.R. at 576. Dr. Parsons also testified that these jobs would allow Steagall to sit or stand at will. *See id.* at 531-32, 577, 581. Steagall responds that the ALJ's hypothetical was flawed, because it did not incorporate Dr. Wunder's opinion that Steagall would be absent from work at least four times per month. As shown above, however, the ALJ properly gave no weight to Dr. Wunder's opinions. Thus, the ALJ's hypothetical accurately described Steagall's limitations, and Dr. Parsons's testimony is substantial evidence that Steagall is not disabled. *See Wilson*, 378 F.3d at 549.

Finally, Steagall identifies several parts of the record that he argues support his disability claim. He points to a 2008 MRI that showed impingement of his nerve root, a few consistencies between Dr. Wunder's findings and other parts of the record, his prescriptions for back-spasm and pain medication, and evidence that he says shows his condition is worsening. Regardless of whether this evidence is "substantial evidence" in support of a finding of disability, we still "must defer to an agency's decision . . . so long as substantial evidence supports the conclusion reached by the ALJ." *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (internal quotation marks omitted). Here, for the reasons discussed, substantial evidence supports the ALJ's finding that Steagall is not disabled.

The district court's judgment is affirmed.