NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0238n.06

No. 19-3956

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 30, 2020
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| JASON WARREN, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) ON APPEAL FROM THE |
| v. | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE |
| COMMISSIONER OF SOCIAL SECURITY, | ) SOUTHERN DISTRICT OF |
| | ) OHIO |
| Defendant-Appellee. | ) |

BEFORE:     MERRITT, SUHRHEINRICH, and SUTTON, Circuit Judges.

SUHRHEINRICH, Circuit Judge.   An administrative law judge denied Jason Warren's request for disability benefits after the ALJ determined that he could perform a significant number of jobs in the national economy.  The district court held that substantial evidence supported that decision, and we affirm.

**I.**

Jason Warren has a history of physical and mental impairments including fibromyalgia, spinal disorders, arthritis of the knees, irritable bowel syndrome, obesity, anxiety and affective disorder.  Warren applied for disability benefits on September 14, 2015, alleging that these conditions precluded him from working since April 5, 2011.  After the Social Security Administration initially denied his claim, Warren appeared for a hearing before an ALJ.

The ALJ heard Warren's testimony, reviewed his medical records, and concluded that he was not disabled within the meaning of the Social Security Act.  In particular, the ALJ found that

Warren suffered from several severe impairments, but that he maintained the ability to perform "sedentary work" as defined by the Social Security regulations, subject to his need to "periodically alternate [between] sitting and standing," to avoid certain postural activities, and to work "in a setting with flexible pace and production quotas." Based on the testimony of a vocational expert, the ALJ concluded that jobs existed in significant numbers in the national economy that Warren could have performed.

This decision became final when the Appeals Council denied review. Warren then sought review of the ALJ's decision in federal district court. The district court rejected all of Warren's arguments and affirmed the decision. This appeal followed.

**II.**

Our task is to determine whether the ALJ applied the correct legal standards and reached a conclusion supported by substantial evidence in the record. *See Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). Substantial evidence is evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

Warren asserts that the ALJ erred by concluding that he retained the ability to work. That general objection represents several underlying arguments. First, Warren contends that the ALJ wrongly discredited his complaints regarding fibromyalgia. Second, he argues that the ALJ failed to consider his IBS, his obesity, and the combined effect of his impairments. Third, he alleges that the ALJ erred by discrediting the opinion of physical therapist Karen Scholl. Fourth, he asserts that the ALJ failed to fully account for his mental impairments. For the reasons below, those arguments lack merit.

**A.**

First, the ALJ properly analyzed Warren's fibromyalgia. He classified fibromyalgia as a severe impairment and observed that it caused "chronic widespread musculoskeletal pain in [Warren's] neck, knees, lower back, left ribs, legs and hips since at least 2014." In addition, he noted that Warren's fibromyalgia led to fatigue and cognitive issues (or "fibro fog"). Nevertheless, the ALJ emphasized that medication helped to control Warren's symptoms. At a visit to rheumatologist Jennifer Lobert on July 28, 2015, Warren described his fibromyalgia pain as "medium" and stated that past treatments, including gabapentin, provided "mild relief." Dr. Lobert increased Warren's dosage of gabapentin, prescribed Effexor, and discussed the "importance of physical activity [and] lifestyle changes." On a follow-up visit in October of 2015, Warren told Dr. Lobert that the medication improved his pain, and they decided to further increase Warren's gabapentin dose. Warren saw Dr. Lobert again in February of 2016. By that time, his symptoms had decreased to the point that they were "manageable with [his] current medication regimen." At that visit, he had a normal gait and full range of motion without pain. Accordingly, substantial evidence suggested that Warren could manage the impact of his fibromyalgia symptoms. *See Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (noting that "a diagnosis of fibromyalgia does not automatically entitle [the claimant] to disability benefits") (citing *Sarchet v. Chater*, 78 F.3d 305, 07 (7th Cir. 1996) ("Some people may have such a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is whether [claimant] is one of the minority.")).

Furthermore, the ALJ adopted several limitations meant to accommodate Plaintiff's pain. He limited Warren to "sedentary work," which "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools" and requires

occasional walking and standing.  20 C.F.R. § 404.1567(a).  Additionally, based on Warren's testimony that he could sit for only 20 minutes at a time and stand for only 5 minutes at a time, the ALJ determined that he could work only in jobs that allowed him to freely alternate sitting and standing.  The ALJ also determined that Warren could only occasionally stoop, kneel, crouch, crawl, or climb ramps or stairs.

In addition, contrary to Warren's assertion on appeal, the ALJ did not discredit his fibromyalgia symptoms based on lack of objective findings or the fact that he did not pursue more serious treatment.  The ALJ discussed those issues in relation to Warren's lumbar disease and knee arthritis, which Warren treated as distinct from his fibromyalgia (even though his fibromyalgia could cause back and knee pain).

**B.**

Next, Warren contends that the ALJ failed to account for the limiting effects of his irritable bowel syndrome, obesity, and the combined effect of his impairments.

The ALJ properly determined that Warren's IBS could be managed in a job with "flexible pace and production quotas."  As the ALJ noted, during the alleged period of disability, Warren's IBS symptoms occurred somewhat rarely and improved with treatment.  At a doctor visit on November 15, 2013, Warren complained of abdominal pain and diarrhea.  The record of this visit suggests that this episode was exacerbated when Warren took antibiotics for a head cold.  After three or four days of taking probiotics, Warren no longer experienced abdominal pain or cramping.  At a return visit the next month, Warren stated that his abdominal pain was improving and denied having diarrhea or vomiting.  Warren felt "really good since having his gallbladder taken out."  In January of 2015, Warren saw a different doctor and complained of IBS symptoms, including loose stools, nausea, and vomiting.  At that time, he had just started taking Metamucil, and the doctor

did not recommend any further treatment. At a follow-up visit in April of 2015, he complained of carpal tunnel and anxiety, but not IBS.

Similarly, the ALJ properly evaluated Warren's obesity. The ALJ recognized that Warren weighed around 400 pounds during the alleged period of disability. However, he determined that obesity did not significantly limit Warren's functional capabilities, noting that his ability to ride a motorcycle (even for short distances) "suggest[ed] that his weight would not prevent him from performing many of the physical activities that work entails, such as sitting, balancing and operating both hand and foot controls." Warren offered no medical evidence to contradict that determination.

In addition, the ALJ considered the combined effect of Warren's impairments. Warren's argument to the contrary fails because it confuses combined impairments with combined *effects* of impairments. For example, Warren contends that his fibromyalgia "manifests itself in diffuse pain, most notably low back and knee pain, IBS type symptoms, and depression" and that his obesity makes all of those conditions worse. But how his conditions relate to one another makes no difference to the question at the heart of the ALJ's analysis, which is whether those impairments affect his functioning. Warren mentions one true example of a combined effect, which is that "his morbid obesity combined with his back pain renders him often in need of assistance after he goes to the bathroom." But he fails to clarify when this problem occurs and what type of bathroom or assistive device could accommodate it. Lacking such information, the ALJ reasonably declined to impose any specific bathroom-related limitations.

Therefore, substantial evidence supports the ALJ's analysis of Warren's IBS, obesity, and the combined effect of his impairments.

**C.**

The ALJ also properly analyzed Karen Scholl's Opinion. After examining Warren once, Scholl opined that he should be subject to severe restrictions, including: (1) lifting something only once per day, (2) carrying something only once per day, (3) bending only once or twice per day, (4) sitting only two hours per day, and (5) working in general for only three hours per day.

The ALJ gave several reasons for discrediting that opinion. First, Scholl examined Warren before she began treating him. This impaired Scholl's opinion because on the date she examined Warren, his "functioning [was] near its nadir." For that reason, Scholl's proposed restrictions conflicted with Warren's medical records, which generally depicted mild impairments that were amenable to treatment. For example, in October of 2014, Warren complained of back pain but stated that physical therapy improved his condition. The records of that visit show that Warren had a normal gait and a negative straight-leg-raise examination. Similarly, treatment notes from rheumatology appointments in October of 2015 and February of 2016 reflect that Warren had a normal gait and full range of motion without pain. Moreover, Warren's medical providers frequently recommended exercise to treat his conditions.

Accordingly, substantial evidence supports the ALJ's decision to partially discredit Karen Scholl's opinion.

**D.**

Finally, the ALJ properly analyzed the limiting effects of Warren's anxiety and depression. The ALJ acknowledged that Warren underwent a consultative examination with psychologist Brian R. Griffiths, who opined that Warren "struggled with concentration, keeping up with others and dealing with stress." However, Warren told Dr. Griffiths that, when he was working, he "got along with his supervisors, coworkers, and customers." In addition, Dr. Griffiths observed that

Warren drove himself to the appointment and arrived on time, acted appropriately throughout the examination, and "was alert, responsive, and oriented to time, place, person, and situation."

In short, Warren offers no evidence proving that his anxiety and depression precluded him from working in "a setting with flexible pace and production quotas," as the ALJ determined he could.

**III.**

For the above reasons, substantial evidence supports the ALJ's determination that Warren was not disabled. We affirm the district court's decision.