NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0498n.06

No. 24-3385

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 06, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| BROOKE TOLAN, | ) | |
| Plaintiff-Appellant, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| Defendant-Appellee. | ) ) | OPINION |

Before: KETHLEDGE, THAPAR, and LARSEN, Circuit Judges.

KETHLEDGE, Circuit Judge. Brooke Tolan appeals the district court's decision to affirm the denial of her latest application for social-security disability benefits. We affirm.

Brooke Tolan previously worked as an administrative clerk. In 2004, Tolan filed the first of several unsuccessful applications for disability benefits and supplemental-security income based on her growing number of physical and mental impairments. In 2016, at age 37, Tolan filed her current application for disability benefits. An ALJ held two hearings, ordered physical and mental evaluations, and, in 2020, concluded that Tolan was not disabled. Tolan challenged that decision and, after she sought judicial review, the parties stipulated to a remand to the agency for further proceedings under 42 U.S.C. § 405(g).

The Appeals Council, in turn, directed the ALJ to reevaluate the medical-source opinion of B.T. Onamusi, M.D., and to reconsider Tolan's residual functional capacity when determining

anew whether Tolan was disabled under the five-step sequential analysis required by the regulations. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The ALJ did so and again found that Tolan had the following severe impairments: "diabetes mellitus, status/post bilateral carpal tunnel release, cubital tunnel syndrome, status/post brain tumor, obesity with status/post gastric bypass, depression, [and] bipolar disorder." Tolan also had non-severe impairments of "sleep apnea, hypersomnia, migraines, hypothyroidism, medial and lateral epicondylitis, and peripheral neuralgia." But those impairments—considered individually or together—did not meet or equal the severity of any "listed" impairment. Tolan's non-exertional limitations—including to work that involves only simple, routine, and repetitive tasks and decisions—prevent her from returning to her prior semi-skilled work. None of those findings are contested here.

The ALJ also found that Tolan could perform a "reduced range" of light work with restrictions that included "lifting up to 15 pounds occasionally." That restriction made Tolan's capacity for work less than "light work," which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). But Tolan argued that she could not do even that reduced range of light work because, according to Dr. Onamusi, she could not lift or carry *any* amount of weight on a frequent basis.

Specifically, as part of the consultative examination report, Onamusi completed a check-the-box form on which Onamusi indicated that Tolan could lift or carry up to 20 pounds occasionally but did not indicate that she could lift or carry any amount of weight "frequently." The ALJ did not adopt either of those limitations. Instead, the ALJ placed "significant weight" on the narrative portion of Onamusi's report, because that portion (a letter) provided "a more open-ended opportunity for Dr. Onamusi to give clear and specific recommendations." The letter described some of Tolan's medical history; noted that Tolan's shoulders, elbows, and wrists were

"doing fine"; reported that Tolan could "do housework, laundry, and grocery shop"; and concluded, in part, that Tolan could "lift up to 15 pounds occasionally [and] use the upper extremities for gross and fine motor tasks frequently." The ALJ adopted 15 pounds as the most Tolan could be required to lift on an occasional basis, but the ALJ also found nothing in the letter that clearly contradicted Tolan's capacity to lift or carry up to 10 pounds frequently. A vocational expert testified that 100,000 unskilled jobs existed in the national economy that can be performed by a person with Tolan's age, education, experience, and work capacity. The ALJ therefore concluded that Tolan was not disabled. The Appeals Council declined to review that decision, and Tolan appealed to federal court. A magistrate judge recommended that the district court affirm the ALJ's decision. Over Tolan's objections, the district court adopted the magistrate judge's recommendation. This appeal followed.

We review only whether the ALJ applied the correct legal standards and reached a conclusion supported by substantial evidence. *See Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). Tolan argues that the ALJ erroneously disregarded Onamusi's recommended limitation that she not lift or carry *any* amount of weight frequently. But "controlling weight" is reserved for treating sources, which Onamusi was not. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). And the effect of Tolan's condition on her capacity to work is a determination expressly reserved for the ALJ. *See* 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96-5P, 1996 WL 374183, at *5 (July 2, 1996). Nor must an ALJ incorporate every limitation from a medical source's recommendation whenever it finds that source persuasive in some respects. *Kinney v. Comm'r of Soc. Sec.*, No. 23-3889, 2024 WL 2273365, at *3 (6th Cir. May 20, 2024). Instead, when an ALJ's work-capacity finding conflicts with an opinion from a medical source, the ALJ must explain why that recommended limitation was not adopted. *See id.*

(quoting Social Security Ruling 96-8P, 1996 WL 374184, at *7 (July 2, 1996)).  The ALJ did so here.

      The district court's judgment is affirmed.