RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0144P (6th Cir.)
File Name: 04a0144p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DEBBIE WEBB,
        *Plaintiff-Appellee,*

        *v.*                                    No. 03-5158

COMMISSIONER OF SOCIAL
SECURITY,
        *Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Eastern District of Kentucky at Pikeville.
No. 01-00021—Jennifer B. Coffman, District Judge.

Argued: March 16, 2004

Decided and Filed: May 19, 2004

Before: NORRIS and COLE, Circuit Judges;
ECONOMUS, District Judge.[*]

_____

[*] The Honorable Peter C. Economus, United States District Judge for the Northern District of Ohio, sitting by designation.

_____

## COUNSEL

**ARGUED:** Susan K. Houser, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Kelly L. Ward, Stanville, Kentucky, for Appellee. **ON BRIEF:** Susan K. Houser, Thomas M. Bondy, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Eric C. Conn, David L. Williams, Stanville, Kentucky, for Appellee.

_____

## OPINION

_____

ALAN E. NORRIS, Circuit Judge. The Commissioner appeals from the district court's partial grant of summary judgment in favor of plaintiff Debbie Webb and from its reversal of the Commissioner's denial of supplemental security income benefits to plaintiff. The district court premised its decision upon the opinion of this court in *Howard v. Comm'r of Social Security*, 276 F.3d 235 (6th Cir. 2002), which it interpreted as mandating reversal. Because we are unable to agree with the district court's interpretation of *Howard*, we reverse its judgment.

### I.

Debbie Webb filed a claim for supplemental security income with the Social Security Administration on July 21, 1997. Her claim was denied initially and upon reconsideration. Webb then moved for a hearing on her claim before an Administrative Law Judge ("ALJ"). ALJ William H. Gitlow denied the claim in a decision dated November 27, 1998. After determining that Webb could not perform the work that she had done in the past, the ALJ concluded that the Commissioner had met her burden of demonstrating that a

significant number of jobs existed in the regional and national economies for Webb to perform, thus preventing her from being eligible for supplemental security income benefits.

In denying Webb's claim, the ALJ relied upon the testimony of a vocational expert, Donald Joe Woolwine. Woolwine testified that jobs existed for Webb in the regional and national economies given her age, education, past work experience and residual functional capacity. In eliciting testimony from Woolwine, the ALJ asked the following hypothetical questions and received the following answers:

Q. I'd like you to assume an individual exertionally limited to lifting and/or carrying a maximum of 20 pounds occasionally, ten pounds frequently with no prolonged sitting or standing and no overhead reaching with the right arm. On such exertional limitations alone, could such an individual perform any of the claimant's past work?

A. No.

Q. Could such an individual perform heavy or medium work?

A. No.

Q. Could such an individual perform light work?

A. Limited.

Q. Sedentary work?

A. Limited.

Q. I'd like you to assume an individual of claimant's age of 44 years, claimant's eighth grade and GED education and training, and work experience, and assume this individual has exertional impairments which limit this individual to a limited range of light work as set

forth by my prior hypothetical. Assume this individual also has nonexertional impairments. This individual may only occasionally climb or balance and is not to stoop, crouch, kneel, or crawl. This individual is limited to simple to moderately complex tasks in a low stress, task-oriented worksetting. This individual is moderately limited in ability to maintain concentration and attention for extended periods. First of all, on these assumptions, in your opinion are there light and sedentary unskilled job categories recognized by the Secretary that such an individual could be expected to be able to perform?

A. Yes.

. . .

Q. If I were to ask you to further assume that this individual has need to avoid an environment of excessive dust, fumes, gases, or chemicals, how, if at all, would that impact upon your previous answers?

A. None.

Webb appealed the ALJ's denial of her claim to the Appeals Council, which affirmed the ALJ's decision on April 20, 2000, making the ALJ's decision the Commissioner's final determination of the claim.

On January 16, 2001, Webb filed a complaint against the Commissioner in federal district court. The case was referred to a magistrate judge who issued a report and recommendation concluding that the ALJ had erred in relying upon Woolwine's testimony because it had been elicited using incomplete hypothetical questions, citing to our opinion in *Howard*. The magistrate judge interpreted *Howard* as holding that ALJs were only permitted to rely upon vocational expert testimony regarding the availability of employment if the hypothetical questions eliciting that testimony listed the claimant's medical conditions.

The district court adopted the report and recommendation. The court agreed that *Howard* requires hypothetical questions to include lists of claimants' medical conditions, although it found that the reasoning of earlier cases that did not require such lists was "significantly more convincing." The government filed a motion to alter or amend judgment under Fed. R. Civ. P. 59(e). The district court denied that motion on November 13, 2002. This appeal followed.

## II.

Upon review of our decision in *Howard* and our prior case law, we are unable to agree with the district court's reading of *Howard*, and we conclude that its decision must be reversed. The district court interpreted *Howard* to require "that the hypothetical should have expressly referenced the plaintiff's diagnosed arthritis." We read *Howard* to hold only that a denial of benefits based upon an ALJ's improper calculation of a claimant's residual functional capacity, a description of what the claimant "can and cannot do," must be reversed. *Howard*, 276 F.3d at 239. Admittedly, there is some confusing language in *Howard* that could conceivably be viewed as requiring that hypothetical questions include lists of claimants' medical conditions. However, we conclude that, given the facts present in *Howard*, that language is not part of its holding, nor can it be so construed if *Howard* is to be read to be consistent with the holdings of our prior decisions.

Under the social security laws, if a claimant concludes that an ALJ erroneously calculated her residual functional capacity, she may bring an action against the Commissioner in federal district court challenging the denial of her benefits. 42 U.S.C. § 405(g). The claimant in *Howard* mounted precisely such a challenge, and this court decided that, because the ALJ had not considered the entirety of the claimant's medical record in calculating her residual functional capacity, the denial of benefits had to be reversed. As explained in the *Howard* opinion:

[T]he ALJ's selective inclusion of only those portions of the [medical] report that cast Howard in a capable light suggests that he only considered part of the report in formulating his conclusion that Howard "need[s] to perform work of a simple and relatively nonstressful nature." As a result, we conclude that the [residual functional capacity] does not accurately describe Howard's abilities and that the ALJ's decision, which is based upon it, is not supported by substantial evidence.

*Howard*, 276 F.3d at 240-41. That ruling was sufficient for the *Howard* court to reverse the Commissioner's denial of benefits. By contrast, in the case at bar, Webb does not challenge ALJ Gitlow's residual functional capacity calculation. Accordingly, *Howard* need not be read to apply to Webb's claim.

Webb argues that other language in the *Howard* opinion requires that ALJs list claimants' medical conditions in their hypothetical questions to vocational experts for those questions to be considered complete. Webb is correct to assert that such language exists in *Howard*. In discussing the proper content of hypothetical questions, the *Howard* court provided the following explanation:

Howard's [residual functional capacity] is to be an "assessment of [her] remaining capacity for work" once her limitations have been taken into account. 20 C.F.R. § 416.945. It is an assessment of what Howard can and cannot do, not what she does and does not suffer from. The hypothetical question posed to a [vocational expert] for purposes of determining whether Howard can perform other work, on the other hand, should be a more complete assessment of her physical and mental state and should include an "accurate[] potray[al] [of her] individual physical and mental impairment[s]." *Varley [v. Sec'y of Health and Human Services]*, 820 F.2d [777,] 779 [(6th Cir. 1987)]; *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir. 1975) (per curiam). Thus, while

the [residual functional capacity] should focus on Howard's abilities or, in other words, what Howard can and cannot do, the hypothetical question should focus on Howard's overall state including Howard's mental and physical maladies.

*Id*. at 239.  The *Howard* court also concluded that, because the hypothetical questions in that case did not include a list of Howard's "maladies," the vocational expert's testimony was unreliable, and the ALJ's denial of benefits was erroneous:

The hypothetical question also fails to describe accurately Howard's physical and mental impairments, a defect which, as we have stated, is fatal to the [vocational expert's] testimony and the ALJ's reliance upon it.

*Id*. at 241.  Finally, the *Howard* court stated that the ALJ should have included a listing of the claimant's medical conditions in the hypothetical questions he posed to the vocational expert:

That portion of the hypothetical question drawn from the medical report . . . is incomplete.  It tells us what Howard can do but tells us nothing about Howard's ailments. The ALJ should have included the diagnosis from that same report which states that Howard suffers from degenerative disc disease, iron deficiency anemia, hypertension, and osteoarthritis.  The ALJ did find that Howard suffered from degenerative disc disease and osteoarthritis.  But this finding was not included in the hypothetical question posed to the [vocational expert] as it should have been.

*Id*.  Webb's argument that this language requires us to reverse the Commissioner's decision denying her benefits fails.  Not only is that language unnecessary to the outcome in *Howard*, but if that language were considered part of *Howard*'s

holding, it would impermissibly conflict with our prior decisions.

A firmly established rule in this circuit prevents a panel of the court from issuing an opinion overruling a decision of another panel.  Were *Howard* to be interpreted to require hypothetical questions to vocational experts to include lists of claimants' medical conditions, it would contravene the holdings of earlier cases of this circuit.  In *Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001), we stated that a hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions. *Foster*, 279 F.3d at 356.  In *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777 (6th Cir. 1987), a case cited in *Howard*, we likewise determined that a vocational expert need only "take[] into account plaintiff's limitations." *Varley*, 820 F.3d at 780.  Except for *Howard*, Webb can cite no case requiring that a hypothetical question include a listing of medical conditions.  Consequently, because such an interpretation would conflict with this circuit's precedent, we cannot read *Howard* to create an entirely new requirement for hypothetical questions to vocational experts.

Moreover, an interpretation of *Howard* that would require vocational experts to evaluate the effect of medical conditions would be inconsistent with the purpose that vocational experts serve under social security regulations.  Under those regulations, the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an "assessment of [her] residual functional capacity." 20 C.F.R. § 416.920(a)(4)(iv).  The vocational expert testifies on the basis of a claimant's "residual functional capacity and . . . age, education, and work experience" and assesses whether the claimant "can make an adjustment to other work."  20 C.F.R. § 416.920(a)(4)(v).  The vocational expert's testimony is directed solely to whether, given a claimant's age, experience, and education, along with the ALJ's assessment of what she "can and cannot do," there exist a significant number of employment opportunities for

her in the regional and national economies. The vocational expert is not expected to evaluate the claimant's medical conditions in making this determination. Indeed, vocational experts are not required to have any medical training, so any evaluation of medical evidence they perform would be outside their area of expertise. Accordingly, in light of the facts present in *Howard*, this circuit's prior case law, and the role of a vocational expert under the social security regulations, we do not read *Howard* to hold that hypothetical questions to vocational experts are required to include lists of claimants' medical conditions.

## III.

For the foregoing reasons, the judgment of the district court is **reversed**, and the Commissioner's denial of benefits is **affirmed**.