NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 29, 2011
Decided January 30, 2012

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 10-3231

| | |
|---|---|
| DAVID G. CHASE, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 08-C-0386 |
| MICHAEL J. ASTRUE, Commissioner of Social Security, *Defendant-Appellee.* | C. N. Clevert, Jr., *Chief Judge.* |

**O R D E R**

David Chase applied for disability insurance benefits and supplemental security income, claiming that he is disabled by an ulcer on his right big toe. The Social Security Administration denied his application initially, on reconsideration, and after a hearing before an administrative law judge; the district court affirmed. On appeal Chase primarily contends that the ALJ, in evaluating his residual functional capacity (RFC) for sedentary work, reached an improper independent medical conclusion about the level of foot elevation that he requires while seated. Because we agree with Chase that substantial evidence does not support the ALJ's RFC assessment, we vacate the district court's decision and remand for additional proceedings.

Chase is a 48-year-old man with a seventh-grade education and prior work experience as a day laborer. In 1995 his right foot was crushed in a forklift accident; in 2000 he reinjured that foot by stepping on a sharp object. Chase alleged disability as of late 2002 due to a recurring ulcer stemming from these injuries and neuropathy of his right big toe.

Chase sought treatment for his right toe ulcer beginning in mid-2002; hospital records from that time noted that the toe's skin and soft tissue were gone and that the doctor could "see nearly down to [the] bones." Medical notes from four months later assessed Chase's ulcer at almost grade 4—the most severe type of pressure ulcer resulting in skin damage due to constant pressure against the skin. Chase was treated in December 2002 at a foot clinic, where doctors removed infected tissue from the ulcer and saw a large callus margin and neuropathy. Chase was prescribed an antibiotic, advised to avoid putting weight on his toe, and referred to the wound care clinic. Over the next three months, doctors there removed infected tissue seven times from Chase's ulcer, which improved slightly. Chase missed several clinic appointments (apparently due to lack of insurance coverage), and in late 2003 reported that his ulcer had worsened when he tried to return to work. A doctor observed bloody drainage and erythema (inflamed lesions), and Chase reported tenderness; he was prescribed antibiotics. In early 2004 the doctor advised Chase not to return to work until his ulcer healed. One year later Chase returned to the hospital, complaining that his toe ulcer had again worsened after he tried to return to work. Another doctor noted that the ulcer was now three centimeters round and calloused, with swelling, inflammation, and cellulitis (a bacterial skin infection).

In mid-2005 Chase began treatment with Dr. Jonathan Towne, a vascular surgeon who would become his treating physician. Towne noted that Chase had significant neuropathy and "almost no sensation" in his right foot. The following month Towne removed infected tissue from the ulcer and reported that Chase's ulcer was less inflamed. Later that month a state-agency physician reviewed Chase's medical records and concluded that Chase could perform a full range of sedentary work requiring him to stand or walk for up to two hours during an eight-hour workday. (A second state-agency physician later reviewed and approved the first physician's assessment without further elaboration.) In October 2005 Towne reported after an evaluation that Chase had a "near atrophic ulcer," and supported Chase's application for disability because he did "not see how [Chase] can do meaningful manual labor at this point with this ulcer." In March 2006 Towne instructed Chase not to work until the ulcer healed; later Towne removed infected tissue from the ulcer and suggested that the toe might be amputated. Chase was later hospitalized for four days after experiencing swelling and pain throughout his right calf and thigh. A doctor observed edema in addition to a three centimeter ulcer on the right big toe. When Towne examined Chase in February 2007, he noted that the ulcer was improving but instructed Chase not to work until the ulcer healed, which would "not occur for the foreseeable future." In a letter

prepared for Chase's 2007 hearing before the ALJ, Towne advised that Chase was to avoid walking, standing, and putting weight on his toe and recommended that Chase elevate his right leg when seated "to avoid edema which could cause further skin breakdown and delay healing."

At the hearing, Chase testified as to the pain and physical limitations posed by his right toe ulcer. He described extreme numbness in his right foot and occasional "shooting pains" from that foot up through the middle of his leg. He explained that for most of the day he sits in his reclining chair with two pillows under his foot. Chase told the ALJ that he did not think he could perform a sedentary job because he must elevate his foot "higher than [his] butt" in order to avoid swelling. A vocational expert later testified that a hypothetical sedentary, unskilled worker could be absent from work up to one day per month. The ALJ asked the expert how many unskilled, sedentary jobs would be available for a worker who must keep his foot "significantly raised"; the expert responded that "10 to 15 to maybe 20 degrees would be still acceptable" but that any higher elevation would make it "extremely difficult to be able to continue to work."

In light of the vocational expert's opinion about foot elevation, Chase's attorney contacted Towne after the hearing and asked him to provide more detailed information regarding his earlier recommendation that Chase should elevate his right foot to reduce edema. Towne responded in writing that "[t]o maximize the avoidance of edema," an individual working in a seated position should elevate the right foot "higher than the heart" and "at least 90 degrees."

The ALJ rendered an unfavorable decision against Chase. Applying the required five-step analysis, *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), the ALJ determined that Chase had not worked since December 2002 (step one); his toe ulcer constituted a severe impairment (step two); his impairment did not meet or equal a listed impairment (step three); he had the RFC to perform the full range of sedentary work with "an allowance to elevate his right foot 15 to 20 degrees (approximately the height of two phonebooks) while seated" and one day off per month (step four); and based on this RFC, Chase could not perform his previous jobs but could perform existing sedentary jobs and thus was not disabled (step five). In finding Chase not disabled, the ALJ determined that Chase's testimony about the "intensity, persistence and limiting effects" of his symptoms was "not entirely credible"; the ALJ added that Chase's injury was not so severe because he did not always follow up promptly with treatment, he used home remedies, and he was able to return to his construction work intermittently. The ALJ also rejected Towne's recommendation that Chase work only while seated with his foot elevated at least 90 degrees; the ALJ discounted that recommendation because Towne offered it after the

hearing in response to a request from Chase's attorney and the medical evidence of record did not otherwise discuss foot elevation.

On appeal Chase contends that the ALJ's RFC determination was not supported by substantial evidence because, in determining that Chase could perform sedentary work by elevating his right foot 15 to 20 degrees, the ALJ made an independent medical conclusion that was not grounded in any medical evidence on the record. Chase urges that remand is necessary to fill an evidentiary deficit in the record about his requisite level of foot elevation, pointing out that the state-agency physicians (who never examined him) did not opine about any level of foot elevation whereas Towne, his treating physician, advised that he should elevate his foot at least 90 degrees.

We agree with Chase that the ALJ overstepped his role by determining that the degree of foot elevation required by Chase was 15 to 20 degrees. When an ALJ denies benefits, he must build an "accurate and logical bridge from the evidence to her conclusion," *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000), and he may not "play doctor" by using his own lay opinions to fill evidentiary gaps in the record, *see Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009); *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990). Neither Chase's treating physician nor the state-agency physicians advised that elevation of 15 to 20 degrees would enable Chase to perform sedentary work. It is an ALJ's responsibility to recognize the need for further medical evaluations of a claimant's conditions before making RFC and disability determinations, *see Scott v. Astrue*, 647 F.3d 734, 741 (7th Cir. 2011); *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000), and here the ALJ should have sought additional evaluations of Chase's condition before estimating the degree of foot elevation that he required.

The commissioner defends the ALJ's ruling on grounds that the ALJ considered the VE's testimony (that elevation of 15 to 20 degrees would be acceptable) together with the state-agency physicians' conclusion that Chase could do sedentary work. But the state-agency physicians said nothing about foot elevation, and an ALJ may not rely on a VE's testimony to resolve medical questions, which are outside a VE's area of expertise. *See Webb v. Comm'r of Social Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). The commissioner also urges that the ALJ reasonably rejected Towne's opinion that Chase required elevation of 90 degrees because that opinion was submitted at the request of Chase's attorney after the hearing rather than during the course of treatment. "[T]hat a medical report is provided at the request of counsel [. . . ] is not a legitimate basis for evaluating the reliability of the report," *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (internal quotation and citation omitted); *see Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011), and the ALJ provided no other basis for

rejecting Towne's opinion. The ALJ also gave no reason for disregarding Chase's testimony that he needed to significantly elevate his right leg at home. The ALJ did observe that Chase appeared to sit "comfortably" during the 45-minute hearing without elevating his leg, but the ALJ's substitution of his own lay judgment for medical opinion was improper. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). The case must be remanded so that further evidence can be introduced about the level of foot elevation Chase requires, and his RFC reevaluated accordingly.

Chase also argues that the ALJ improperly discounted his credibility and drew inappropriate inferences about the severity of his right toe condition by ignoring his testimony about restrictions on daily activities, pain and numbness in his right foot, the need to elevate his foot at home, and insurance difficulties that occasionally prevented his prompt compliance with treatment orders.

We are troubled by the ALJ's failure to build a "logical bridge" between the record and his credibility determination. *See Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010); *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009). The ALJ found Chase noncompliant with medical treatment and speculated that Chase did not consider his own condition severe, but the ALJ did not acknowledge Chase's testimony concerning his lack of financial resources for prescriptions and a therapeutic shoe, or the many occasions on which Chase did comply with treatment orders. Nor did the ALJ address Chase's testimony about his inability to perform simple chores and his symptoms of sharp pain and numbness in his right foot. We again hasten to add that the ALJ found Chase "not entirely credible"—a phrase we have repeatedly derided as "meaningless boilerplate." *See Parker v. Astrue*, 597 F.3d 920, 921–22 (7th Cir. 2010); *see also Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011); *Punzio*, 630 F.3d at 709; *Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir. 2010). The phrase fails to specify which statements are or are not credible, and the ALJ's explanation here leaves us with no basis to review whether his conclusion was supported by substantial evidence or to understand how his determination influenced his RFC determination. Remand is required so that the ALJ can fully assess the credibility of Chase's testimony as part of the RFC determination.

We VACATE the judgment and REMAND the case with instructions that it be returned to the Social Security Administration for further proceedings consistent with this order.